**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| RICHARD SCHWAB, individually and on behalf of all others similarly situated, ) ) | CASE NO.   5:11-cv-1216 |
| Plaintiffs,  ) ) | JUDGE LIOI |
| v.  ) ) | MAGISTRATE JUDGE VECCHIARELLI |
| J.F.BERNARD, INC., *et al.,*  ) ) | **REPORT AND RECOMMENDATION** |
| Defendants. ) | Doc. No. 8 |

This case is before the magistrate judge on referral.  Before the court is the motion of plaintiff, Richard Schwab ("Schwab"), to proceed conditionally with this case as a collective action pursuant to the Fair Labor Standards Act, as amended at 29 U.S.C. § 201, *et seq.* ("FLSA").  Doc. No. 8.  Defendants, J.F. Bernard, Inc. ("JF Bernard") and Joseph Bernard, Jr. ("Bernard"; collectively, "the defendants"), oppose Schwab's motion in part.  Doc. No. 11.  As described below, Schwab's motion should be **GRANTED** by permitting Schwab to proceed conditionally as a collective action that includes claims that defendants failed to compensate plaintiffs for travel from the shop to the work site and from the work site to the shop, failed to compensate plaintiffs for travel between worksites during the day, and failed to compensate plaintffs for activities performed before and after the shift that were integral and dispensable to their principal activities  Schwab's motion should be **DENIED**, however, by excluding from the

collective action Schwab's claim that plaintiffs were victims of a common policy or plan that violated the law by failing to compensate them for travel between home and work when required to travel outside their normal commuting area.

I

The parties do not dispute the following relevant facts. JF Bernard is an Ohio corporation serving as a commercial heating and air conditioning contractor. Bernard owns JF Bernard and is a resident of the state of Ohio.

Schwab began working for JF Bernard on May 29, 2007 as a heating and air conditioning ("HVAC") installer. Schwab last worked for JF Bernard on April 15, 2011. Schwab alleges that while he worked for JF Bernard,[1] it did not compensate him for time spent at the shop loading or unloading the truck with materials or picking up supplies, for his travel from the shop to the job site, or for travel between job sites during the work day. Schwab also alleges that beginning in late 2008 or early 2009, JF Bernard changed its policy of compensating Schwab and other workers for travel outside their normal commuting area. Schwab further alleges that, after that change in policy, if he submitted any timesheet which included a request for compensation for travel time outside the normal commuting area, such a timesheet would be returned by JF Bernard with instructions to remove those travel hours. According to Schwab, JF Bernard's policy was to pay workers only for time spent at the job site. He alleges that instructions from the defendants and interactions with other employees made clear that the above failures to compensate employees properly were the result of JF Bernard's policies.

---

[1] Schwab does not explain his theory of liability as to Bernard.

2

Finally, Schwab alleges that other installers also were not paid for their compensable time traveling, loading, unloading, or picking up supplies.

In support of his contention that the failure to pay compensable time was defendants' policy, Schwab provides affidavits from Ronald Gary Roberts ("Roberts") and Matthew Oakes ("Oakes"). Roberts and Oakes were heating and air conditioning installers for JF Bernard during most of the period that JF Bernard employed Schwab. Their affidavits assert that they, too, were not paid for travel outside their normal commuting area, time spent at the shop loading or unloading trucks or picking up supplies, or travel between the shop and the job site. Oakes further alleges that he was not paid for travel between job sites. Roberts and Oakes allege that this was company policy.

Schwab now moves to proceed conditionally with this case as a collective action pursuant to the FLSA. Schwab defines the proposed class for the collective action as follows:

> All current and former employees of J.F. Bernard, Inc. in the HVAC trade as Installers and who were and/or are subject to the following common practices or policies of the Defendants:
> (a) Who worked for J.F. Bernard, Inc. at any time from three (3) years before the filing of this Complaint to the present; and
> (b) Who were not properly compensated for travel time when required to travel outside their normal commuting area; or
> (c) Who were not properly compensated for travel from the shop to the work site and from the work site to the shop; or
> (d) Who were not properly compensated for travel between worksites during the day; or
> (e) Who were not compensated for activities performed before and after the shift that were integral and dispensable to their principal activities; for example, loading and unloading trucks and materials before and after their scheduled

3

shifts.[2]

Plaintiffs' Memorandum of Law in Support of Their Motion ("Pl. Memo."), Doc. No. 9, p. 5. Schwab includes in the proposed class all such employees who worked for JF Bernard from June 13, 2008 to the present.

II

Title 29 U.S.C.A. § 216(b) ("§ 216(b)") of the FLSA provides the sole means of enforcing the FLSA. Pursuant to § 216(b), employees initiating an action to enforce provisions of the FLSA may sue alone on their own behalf, or jointly on their own behalf and on behalf of "similarly situated" persons. A suit on a plaintiff's own behalf and on behalf of similarly situated persons is properly called a "collective action."

Section 216(b) establishes two requirements for the formation of a collective action. First, the plaintiffs must actually be "similarly situated" to other represented plaintiffs. Second, all plaintiffs must signal in writing their affirmative consent to participate in the action. *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 167-68 (1989). Unlike class actions, once preliminary approval has been given to form a collective action, membership in the collectivity of plaintiffs is not automatic. Similarly situated persons who wish to join the suit must "opt in" to a collective action.

There is a two-stage process to determine whether plaintiffs are similarly situated for purposes of a collective action. The first stage, known as the "notice stage," occurs

---

[2] This class differs from the class defined in the complaint. The complaint also included within the class those employees "[w]ho worked more than forty (40) hours per week during at least one week of their employment and were not paid at least one and a half times their regular rate of pay for those hours worked in excess of forty hours per week." Complaint ¶ 12(b).

4

at the beginning of discovery. *Comer v. Wal-Mart Stores*, 454 F.3d 544, 546 (6th Cir. 2006). The standard at this stage for determining whether other, similarly-situated plaintiffs might exist is "fairly lenient." *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004). The burden is on plaintiffs to submit evidence that establishes "at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exists." *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 217 (E.D. Mich. 2010) (quoting *Olivo*, 374 F. Supp. 2d at 548).

To be considered "similarly situated," it is sufficient if the plaintiffs' "claims [are] unified by common theories of defendants' statutory violations, even if the proofs of those theories are inevitably individualized and distinct." *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009). "The plaintiff must show only that his position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546-47 (internal quotation marks and citations omitted). "[D]istrict courts generally allow the lead plaintiffs to 'show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Wlotkowski*, 267 F.R.D. at 217 (quoting *Olivo,* 374 F. Supp. 2d at 548). "[T]he Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Id.* (quoting *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009)). If a plaintiff succeeds in carrying the burden in the first stage, a district court may then conditionally certify a collective action and authorize the plaintiff to notify other similarly-situated employees so that they may opt into the action. *Hoffmann-La Roche*, 493 U.S. at 168; *Wlotkowski*, 267 F.R.D.

at 217.

The second stage of authorizing a collective action occurs after "all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546 (quoting *Goldman v. RadioShack Corp.*, No. 2:03-cv-0032, 2003 WL 21250571, at *6 (E.D. Pa. Apr. 16, 2003)). At this stage, the court "has much more information on which to base its decision" and "examine[s] more closely the question of whether particular members of the class are, in fact, similarly situated." *Id.* at 547 (citation and internal quotation marks omitted). Because the court has more information, it applies a "stricter standard" in deciding whether to permanently certify the collective action. *See id.* The burden is now on the plaintiff to introduce "substantial evidence" that the opt-in plaintiffs are similarly situated. *White v. Baptist Mem'l Health Care Corp.*, No. 08-2478, 2011 WL 1883959, at *4 (W.D. Tenn. May 17, 2011). It is at this stage that a court may consider the "disparate factual and employment settings of the individual plaintiffs" in determining whether plaintiffs are similarly situated. *Wlotkowski*, 267 F.R.D. at 219 (quoting *White v. MPW Indus. Servs. Inc.,* 236 F.R.D. 363, 373 (E.D. Tenn. 2006)).

Most courts agree that collective actions pursuant to § 216 should not be guided by Rule 23. *See, e.g.*, *Groshek v. Babcock & Wilcox Tubular Prods. Div.*, 425 F. Supp. 232, 234 (D. Wis. 1977) ("This court has no authority under the FLSA to adopt portions of Rule 23 procedures and apply them to an action brought under the Act."). This includes requiring the certification of a class as is required by Rule 23. *Donovan v. Univ. of Tex. at El Paso*, 643 F.2d 1201, 1208 (5th Cir. 1981). Moreover, particularly at the notice stage of certification, consideration of such factors as commonality, typicality, adequacy of representation, and whether common questions of fact predominate runs

6

counter to Sixth Circuit caselaw on the subject, as the Sixth Circuit has found that contingent certification is appropriate when claims share common theories of defendants' statutory violations even if the proofs of those theories are inevitably individualized and distinct.

Although courts should not be guided by Rule 23 in managing collective actions, courts may impose some requirements not described by the statute on plaintiffs before allowing such actions to proceed.  *See Hoffman-LaRoche*, 493 U.S. at 170-71.  These additional requirements are necessary because § 216(b) is an "opt-in" collective action, unlike the "opt-out" class action brought pursuant to Rule 23.  *See id.*  The court's managerial responsibility allows a court, therefore, to impose such requirements on plaintiffs as may be necessary to manage the conduct of a § 216(b) collective action in an efficient way.  *See id.*  These requirements may include court approval of the notice sent to potential plaintiffs and the imposition of a deadline for potential plaintiffs to join the action.  *See id.* at 168-72.

III

Schwab argues that the proposed class should be certified pursuant to § 216(b) because (1) the complaint alleges that all Installers were subjected to the same impermissible company-wide policies of (a) not compensating travel time for required travel outside an installer's normal commuting area, (b) not compensating travel from the shop to the work site, (c) not compensating travel during the day between work sites, and (d) not compensating work before and after the normal shift; (2) those policies violated the FLSA; and (3) affidavits from Schwab and former employees Roberts and Oakes provide evidence that these policies were company-wide within JF Bernard.

7

Defendants do not challenge certification of a class consisting of persons allegedly not compensated for travel from the shop to the work site or not compensated for work before and after the normal shift.  They do challenge certification of a class that would include persons not compensated for travel time for required travel outside an installer's normal commuting area or not compensated for travel during the day between work sites.  Defendants dispute these claims in the proposed classs because (1) a policy regarding travel to and from the work site does not violate the FLSA, and (2) Schwab fails to make any factual showing that defendants had a common policy, plan, or practice not to compensate employees for travel between work sites.  Schwab challenges each of these assertions.

*A.     Compensating travel to and from the worksite*

Defendants argue that the court should not certify the proposed collective action because the FLSA does not require employers to compensate employees for travel to and from the work site and that, therefore, plaintiffs fail to make the "modest factual showing" that they are entitled to relief under the FLSA.  Defendants cite *Olivo v. GMAC Mortgage Corp.,* 374 F. Supp. 2d 545, 549 (E.D. Mich. 2004), for the proposition that failure to demonstrate that the accused conduct violates the FLSA  constitutes a failure to make the required modest showing that they are entitled to relief.  Schwab replies that although "normal travel" to and from the work site is not compensable under the FLSA, travel beyond "normal travel" *is* compensable pursuant to the FLSA, and this is the claim that Schwab raises.  Schwab cites *Kavanaugh v. Grand Union Co.*, 192 F.3d 269 (2d Cir. 1999), in support of his contention that travel beyond "normal" travel time is compensable pursuant to the FLSA.

8

> Title 29 U.S.C. § 254(a) ("§ 245(a)") provides in relevant part as follows:
>
> [N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938 . . . on account of the failure of such employer to pay . . . an employee overtime compensation, for or on account of any of . . . walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform . . . .

Title 29 C.F.R. § 785.35 ("§ 785.35"), interpreting this subsection of § 254(a), states the following:

> An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not worktime.

Despite § 245(a), travel from home to work must be compensated if such compensation is required by either of the following:

> (1) an express provision of a written or nonwritten contract in effect, at the time of such activity . . . ; or
>
> (2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract.

29 U.S.C. § 254(b).

The regulations also provide examples to help clarify what is compensable travel time pursuant to § 254(a) and § 245(a):

> Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice. If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time. However, if the employee goes home instead of returning to his employer's premises, the travel after 8 p.m. is home-to-work travel

9

and is not hours worked.

29 C.F.R. § 785.38 ("§ 785.38").

To summarize, the statute and accompanying regulations hold that "normal" travel to and from work is not generally compensable unless (1) the employee is required to report to the employer's premises before or after traveling to or from the work site; (2) a written or nonwritten contract requires that travel to and from work be compensated; or (3) a custom or practice in effect at the time of the travel compensates travel to and from work. Thus, riding by boat for up to an hour to arrive at the area of principal work activity is not compensable. *Ralph v. Tidewater Construction Corp.,* 361 F.2d 806, 808 (4th Cir. 1966). A thirty minute ride in an employer's bus from main camp to the work site is not compensable. *Dolan v. Project Construction Corp.,* 558 F. Supp. 1308, 1309-11 (D. Colo. 1983). Farm workers' travel of up to two hours from a pickup point to the work site is not compensable. *Vega v. Gasper,* 36 F.3d 417, 424-25 (5th Cir. 1994). Travel by bus drivers in a company shuttle bus to the first shift or from the last shift of the day is not compensable. *United Transp. Union Local 1745 v. City of Albuquerque,* 178 F.3d 1109, 1120-21 (10th Cir. 1999). Although travel between home and work is rarely compensable, defendants' position that such travel is never compensable is incorrect.

Schwab argues that any travel to and from work that is not "normal" is compensable and cites *Kavanaugh* in support of his claim that the travel of JF Bernard employees to distant worksites was not normal travel. DOL interpretive opinions hold that travel "within the normal commuting area" or "within the normal commuting area of the employer's establishment" is not compensable. Wage and Hour Div. Op. Letter, 1997 WL 998025 (Dep't Labor July 28, 1997); Wage and Hour Div. Op. Letter, 1995 WL 1032479 (Dep't

Labor April 3, 1995). *Kavanaugh* interprets "normal travel time" to mean "the time normally spent by a specific employee traveling to work." *Kavanagh*, 192 F.3d at 272. *Kavanaugh* adds, however, "The term does not represent an objective standard of how far most workers commute or how far they may reasonably be expected to commute. Instead, it represents a subjective standard, defined by what is usual within the confines of a particular employment relationship." *Id.* In *Kavanaugh*, the plaintiff was a non-union mechanic who did not have a fixed work location. His employer sent him to various stores it owned as his services were needed. Some work assignments required him to travel up to four hours from home to the work site. The *Kavanaugh* court found that despite the time and distance of Kavanaugh's travel between home and work, that travel was not compensable because such travel "was a contemplated, normal" incidence of Kavanaugh's employment. *Id.* at 273.

In Schwab's case, Schwab's pleadings and affidavits fail to make the "modest factual showing" necessary to certify a collective action which would include the claim that JF Bernard failed to pay for travel between home and worksites outside the normal travel area. Schwab's complaint merely assert's the conclusory claim that Schwab "was not properly compensated for travel time when he was required to travel outside Defendants' normal commuting area." Complaint at 4. Schwab includes no factual allegations to clarify what is meant by "normal commuting area." Schwab's affidavit contains the following allegations:

   4.   For at least the first eighteen months of employment, J.F. Bernard, Inc. paid its HVAC Installers' travel time. . . .
   6.   During that period, if we traveled beyond an hour, J.F. Bernard paid our travel time and gave us the option of getting a hotel room.
   7.   Sometime in late 2008 or early 2009, the company notified me and the other

11

>> employees that I should stop entering travel time on my timesheet because the company would no longer pay it.
> 8. Shortly thereafter, the company had an employee meeting where Steve Norfert told all the employees that J.F. Bernard, Inc. would no longer pay travel time.
> 9. . . . [D]uring [2009-2010], I was not permitted to include travel time when submitting my weekly timesheets. During this time period, I often worked in Pittsburgh, Pennsylvania, and I was not paid travel time for my daily commute, which was around a three hour round trip. . . .
> 10. It was a company-wide policy not to pay employees for travel time. . . .

Schwab aff. at ¶¶ 4-10.

The gravamen of Schwab's complaint, therefore, with respect to failure to compensate employees for commuting outside their "normal travel area" is that the defendants violated the FLSA by instituting a policy of not paying for such travel. But this, by itself, does not state a claim for relief.[3] Schwab does not allege that a written or nonwritten contract required J.F. Bernard compensate employees for travel between home and work outside the normal travel area. And although it was once defendants' custom or practice to compensate employees for travel between home and work outside the normal travel area, Schwab seeks compensation for such travel when that policy was no longer in effect. The changed policy by which defendants no longer compensated employees for such travel became the new standard for "what is usual within the confines of a particular employment relationship." *Kavanaugh*, 192 F.3d at 272. By this standard, Schwab's travel to Pittsburgh or to other worksites became "normal" travel, as it was within the expectations of the parties within that employment relationship. As was the case with Kavanaugh's long commutes, Schwab's travel to relatively distant worksites under the new policy is not

---

[3] If the employee is required to report to the employer's premises before or after a commute from the worksite, such travel is compensable. Schwab asserts a separate claim, however, seeking compensation for such travel.

12

compensable pursuant to the FLSA.

Insofar as the complaint asserts that defendants failed to compensate Schwab for travel between home and work outside of his normal commuting area after changing their policy of paying for such travel, Schwab fails to state a claim under the FLSA. Having failed to make the "modest factual showing" necessary for certification of a collective action which would include this claim, Schwab's motion to certify a collective action should be denied with respect to this claim.[4]

*B.     Factual showing regarding a common policy, plan, or practice*

Defendants argue that the court should deny the motion to certify a class of persons allegedly not compensated for travel between worksites because Schwab fails to make any factual showing that defendants had a common policy, plan, or practice of not compensating employees for travel between worksites. Schwab responds that examination of whether defendants had a common policy, plan, or practice not to compensate employees for travel between worksites is a question that goes to the ultimate merits of the case and is not an appropriate issue when considering conditional certification. Schwab also contends that he has presented a sufficient factual basis to support his contention that such a policy, plan, or practice existed by way of the affidavits of Roberts and Oakes.

As already discussed, caselaw in the Sixth Circuit requires plaintiffs to establish that potential claimants are similarly situated by making a "modest factual showing" sufficient

---

[4] In the companion case, the magistrate judge recommended that the court certify a collective action with respect to all of plaintiff's claims, including a claim for compensation for travel between home and work outside the normal travel area after the change in policy. The difference between the two results is that defendants opposed certification *en toto* in the companion case, whereas they opposed certification of just two of Schwab's four claims in this case.

13

to demonstrate that the plaintiff and other, potential plaintiffs were victims of a common policy or plan. The affidavits from Schwab and Oakes are sufficient to make this "modest factual showing."

Defendants proffer time cards and an affidavit to demonstrate that they paid for travel between work sites. As courts do not resolve issues addressing the ultimate merits, do not resolve factual disputes, and do not weigh credibility at the conditional certification stage, these proffers are not relevant to the issue currently before the court.

Defendants also argue that the affidavit of Roberts does not support the contention that JF Bernard failed to pay employees for travel between worksites. Affidavit of Roberts, Defendants' Opposition, Exh. 2. Defendants are correct. Nevertheless, the affidavit of Oakes does make such an allegation, based on instructions JF Bernard gave to Oakes directing him to exclude such travel from his timesheets. Oakes aff. at ¶¶ 19-20. This, in conjunction with the affidavit of Schwab, is sufficient for the "modest factual showing" required at the initial stage of certification.[5] Thus, Schwab presents sufficient evidence to support a colorable belief that defendants did not pay employees for travel between work sites.

---

[5] Defendants cite *Palacios v. Boehringer Ingelheim Pharms., Inc.*, 2011 U.S. Dist. LEXIS 92002 (S.D. Fla. April 18, 2011), for the proposition that affidavits are insufficient to make the required "modest factual showing." That case is not persuasive. First, in *Palacios*, plaintiff had executed a separation agreement which the court found waived the right to bring a collective action against his employer. Second, the court found that plaintiff had failed to demonstrate that other potential class members wished to participate in the litigation. Third, the court found that plaintiff's claims were not amenable to generalized evidence and, therefore, not suitable to a collective action. Fourth, in finding that the affidavits in question were insufficient, the court found that the affidavits were grounded in the affiant's *belief* rather than knowledge. In the present case, Roberts alleges company policy on the basis of instructions from company representatives. Given these differences, *Palacios* is not persuasive authority in the present case.

IV

In sum, Schwab submits evidence that establishes at least a colorable basis for believing that a class of similarly-situated plaintiffs exists which is unified by one or more of the following statutory violations as alleged in his complaint:

- failure to compensate them for travel from the shop to the work site and from the work site to the shop; or
- failure to compensate them for travel between worksites during the day; or
- failure to compensate them for activities performed before and after the shift that were integral and dispensable to their principal activities.

Schwab has made the requisite "modest factual showing" sufficient to demonstrate that he and other potential, similarly-situated plaintiffs together were victims of a common policy or plan that violated the law.  Schwab has failed to make the requisite "modest factual showing," however, that he and other potential, similarly-situated plaintiffs were victims of a common policy or plan that violated the law by failing to compensate them for travel between home and work when required to travel outside their normal commuting area.  For these reasons, Schwab's motion for conditional certification pursuant to § 216(b) should be **GRANTED** as to the three alleged violations of the FLSA described above.  That is, the class as conditionally certified should include persons alleging that defendants failed to compensate them for (1) travel from the shop to the work site and from the work site to the shop; (2) travel between worksites during the day; or (3) activities performed before and after the shift that were integral and dispensable to their principal activities.  Schwab's motion should be **DENIED** as to his remaining alleged violation of the FLSA, denominated

as claim (b) in his complaint.

Defendants ask that, in the event the court approves conditional certification, the court authorize the proposed notice attached to defendants' response brief as the notice to be sent to potential class members. Schwab responds to this request as follows: "Plaintiffs do not object to Defendants' request to allow the parties two weeks from the Court's decision in which to negotiate the language of the agreement and come to an agreement regarding the notice."[6] Reply Brief, Doc. No. 12, p. 6. It is unclear, therefore, whether Schwab approves of defendants' proposed notice. Accordingly, in the event this Report and Recommendation is adopted and the conditional certification is approved, counsel should be granted 10 days to negotiate the language of the notice. In addition, after any ruling by Judge Lioi on this Report and Recommendation, counsel shall promptly contact Wanda Golden, deputy for the chambers of the Magistrate Judge, at 216-357-7130 to request a telephone conference regarding scheduling.

Date: January 4, 2012          s/ *Nancy A. Vecchiarelli*
                               U.S. MAGISTRATE JUDGE

### **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111.**

---

[6] In the companion case, defendants had asked the court that, in the event the court approves conditional certification, the court grant the parties two weeks to negotiate the language of the notice. Schwab did not object to that request.

16